*Execution version*

INNOVATIVE MATTRESS SOLUTIONS, LLC
$14,000,000 SUPER-PRIORITY SENIOR SECURED DEBTOR-IN-POSSESSION REVOLVING CREDIT FACILITY

SUMMARY OF TERMS AND CONDITIONS

Set forth below is a summary of certain key terms (the "Term Sheet") for a proposed revolving credit facility (the "DIP Facility") of up to $14,000,000 with an initial commitment of $6,000,000, to be made available to Innovative Mattress Solutions, LLC, as borrower (the "Borrower") and entered into among the Borrower and certain of its affiliates as guarantors, in their capacities as debtors-in-possessions ("Debtors") in Chapter 11 Cases (the "Chapter 11 Cases") to be commenced in the United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court").   Tempur World, LLC (the "DIP Lender") is pleased to advise you of its [commitment] to provide the principal amount of the DIP Facility upon the terms and subject to the conditions set forth in this Term Sheet.  The commitments hereunder will expire in the event the Closing Date (as defined below) does not occur by January 18, 2019.

| Material Provision | Summary Description |
|---|---|
| **DIP Lender:** | Tempur World, LLC ("TSI") |
| **Borrower:** | Innovative Mattress Solutions, LLC (together with the Guarantors, the "Obligors") |
| **Guarantors:** | Each of the following entities (collectively, the "Guarantors") hereby and pursuant to the DIP Loan Documents (as defined below) guarantees the payment and performance in full of the DIP Obligations (as defined below) and waives all suretyship defenses in connection with the provision of such guarantee, Each such guarantee is, and shall be, a guarantee of payment and not collection: <br><br> Knopf Systems, LLC <br><br> K.B. & Associates, Incorporated <br><br> Brown Immobilien LLC <br><br> Sleep Outfitters of Kentucky, LLC <br><br> Sleep Outfitters of Ohio LLC |

|  | Sleep Outfitters of Tennessee LLC |
|---|---|
|  | Sleep Outfitters of Alabama LLC |
|  | Sleep Outfitters of Indiana LLC |
|  | Sleep Liquidators LLC and |
|  | Sleep Outfitters of West Virginia, LLC |
| **Pre-Petition Facilities:** | The "Pre-Petition Loan Agreements" means, collectively, (i) that certain term loan facility pursuant to that Promissory Note and Security Agreement, dated April 12, 2012 with the Borrower and Tempur World LLC in its capacity as lender (the "Prepetition TL Lender")  (as amended, modified, and renewed, the "Pre-Petition Term Loan"); and (ii) that certain commercial line of credit dated August, 20, 2003 by and between the Borrower and Tempur World LLC in its capacity as lender (the "Pre-Petition LOC Lender", and together with the Prepetition TL Lender, the "Pre-Petition Lenders") (as amended, modified, and renewed, the "Pre-Petition LOC Loan"). |
|  | The "Pre-Petition Collateral" means, collectively, the collateral in existence on the Petition Date and all the products and proceeds thereof securing the obligations (the "Prepetition Facilities Obligations") of the Borrower and certain guarantors under the Pre-Petition Loan Agreements and all documents executed in furtherance or in connection therewith, including the notes, mortgages, assignments of insurance policies, guarantees, security agreements, pledge agreements and hypothecation agreements (collectively, the "Pre-Petition Loan Documents"). The liens on and security interests in the Pre-Petition Collateral are referred to herein as the "Pre-Petition Security Interests"). |
| **Petition Date:** | The date the Debtors commence their Chapter 11 Cases |
| **Purpose/Use of Proceeds:** | The Borrower shall use the proceeds (the "DIP Loan Proceeds") of the DIP Facility as specified in the DIP Budget and as required to be made pursuant to any DIP Order entered by the Bankruptcy Court.  Furthermore the Borrower shall use the DIP Loan Proceeds only for the purpose of (i) payment of amounts due under certain leases, certain employee-related, maintenance and other expenses of the Borrower, (ii) restructuring costs and professional fees of the Borrower and Guarantors related to the Chapter 11 Cases, (iii) interest, premiums, fees and expenses payable hereunder to TSI in its capacity as DIP Lender, and payable to TSI in such capacity under the DIP Loan Documents |

| | |
|---|---|
| | and the DIP Orders, (iv) adequate protection payments provided to the Pre-Petition Lenders (including amounts for the Roll-up (as defined below) and (v) and other items, all of the foregoing strictly in accordance with the allowed disbursements set forth in the DIP Budget; provided, however, that no DIP Loan Proceeds or any Cash Collateral shall be used to, among other things, (i) object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under, or the liens and security interests granted under the DIP Facility or the Pre-Petition Loan Documents, (ii) investigate, initiate, assert or prosecute any claims or defenses or commence causes of action against (provided that the official committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code (the "Creditor's Committee") may be reimbursed for up to $20,000 for fees and expenses incurred in connection with the investigation of, but not the commencement or pursuant of litigation, objection or any challenge to, any Pre-Petition Security Interests or Prepetition Loan Documents, (a) the DIP Lender, or any of its respective officers, directors, employees, agents, attorneys, representatives, subsidiaries, affiliates or shareholders (collectively the "Lender Related Parties") under or relating to the DIP Facility or (b) the Pre-Petition Lenders or any of its Lender Related Parties under or relating to the Pre-Petition Loan Agreement, (iii) prevent, hinder or delay, whether directly or indirectly, the DIP Lender's assertion or enforcement of its liens and security interests, it efforts to realize upon any DIP Collateral, or exercise any other rights and remedies under the DIP Credit Documents or applicable law. |
| **Amount of Commitment:** | $14,000,000 |
| **DIP Facility:** | The DIP Lender will provide to the Debtors a senior secured, superiority revolving credit facility (the "DIP Facility") in the aggregate commitment amount of up to $14,000,000, subject to increase upon consent of the DIP Lender and approval of the Bankruptcy Court (collectively, the "DIP Loans").<br><br>An amount of up to approximately $6,000,000 (the "Interim Amounts") of the DIP Facility, approved by the Bankruptcy Court pursuant to an Interim DIP Order, shall be made available during the period from the date of entry of the Interim DIP Order by the Bankruptcy Court through the date of entry of the Final DIP Order (as defined below) by the Bankruptcy Court, and the balance of the DIP Loans (the "Final Amounts") shall be available only upon and after entry of the Final DIP Order. Pending entry of the Final DIP Order, the DIP Lender shall be afforded all of the protections contained in the Interim DIP Order. |

| | |
|---|---|
| | The DIP Facility will be made available if (and only if) the Interim DIP Order or Final DIP Order, as applicable, is in full force and effect. Subject to the terms and conditions hereof including the Conditions Precedent specified below (and with respect to the Final Amounts, the terms and conditions of the DIP Loan Documents) and as applicable, the Borrower shall be entitled to draw amounts available under the DIP Loans by delivery of a loan draw request (which shall include such information as the DIP Lender reasonably requests) which shall include a certification in the form reasonably acceptable to the DIP Lender that (i) no default or Event of Default has occurred and is continuing, (ii) all representations and warranties shall be true and correct in all material respect as of the date of the loan request; and (iii) the loans being requested shall be used in accordance with the DIP Budget. A draw on the DIP Loans, subject to the foregoing conditions and consistent with past ordinary course processing procedures, (and with respect to the Final Amounts, all as more specifically set forth in the DIP Loan Documents) and the DIP Orders, will be funded on the second Business Day following request therefor if requested by 2:00 p.m. Eastern Standard Time, or on the third Business Day immediately following the date of such request if such request is made after 2:00 p.m. Eastern Standard Time. In no instance shall a draw of the DIP Loans in accordance with the terms set forth herein be made in an amount of less than $500,000.<br><br>"Business Day" means any day other than a Saturday, a Sunday or a day on which commercial banks in New York, New York are required or authorized to be closed, and, if such day relates to any interest rate settings as to the DIP Loan, any fundings, disbursements, settlements and payments in respect of any such DIP Loan, or any other dealings to be carried out pursuant to the DIP Loan Documents in respect of any such DIP Loan, means any such day on which dealings in deposits are conducted by and between banks in the London interbank eurodollar market. |
| **Maturity Date:** | The DIP Loans will mature (the "Maturity Date," subject to extension as provided herein) and will be immediately due and payable on the earliest to occur of any of the following:<br><br>The DIP Facility and the Debtor's right to use Cash Collateral shall automatically terminate without further notice or court proceedings on the earliest of (i) 120 days after the Petition Date (the "Scheduled Maturity Date"); (ii) the date of acceleration of any outstanding borrowings under the DIP Facility pursuant to an |

| | |
|---|---|
| | Event of Default; (iii) the first Business Day on which the Interim DIP Order expires by its terms or is terminated, unless the Final DIP Order has been entered and becomes effective prior thereto or contemporaneous therewith; (iv) conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code unless otherwise consented to in writing by the DIP Lender; (v) dismissal of any of the Chapter 11 Cases, unless otherwise consented to in writing by the DIP Lender; (vi) the date of consummation of a sale of all, substantially all or a material portion of the DIP Collateral; and (vii) the effective date of any Debtors' plan of reorganization confirmed in the Chapter 11 Cases. |
| **Amendment to Maturity Date:** | Any extension of the Maturity Date shall be subject to the prior approval of the DIP Lender in its sole discretion. |
| **DIP Collateral and Priority** | Each Obligor hereby and pursuant to the other DIP Credit Documents, grants a security interest in all of its rights, title and interests in all of its property, whether real or personal, tangible or intangible, now existing or hereafter acquired, including, without limitation, all real estate, inventory, equipment, fixtures, commercial tort claims, deposit accounts, investment property, documents, accounts, chattel paper (whether electronic or tangible), intercompany loans, general intangibles (including patents, trademarks and other intellectual property), instruments, business interruption insurance, supporting obligations and proceeds of all of the foregoing (collectively, and to the fully defined in the DIP Loan Documents, the "<u>DIP Collateral</u>"), <u>provided that</u>, the DIP Collateral shall not include, and the security interests created by this Term Sheet and the other DIP Credit Documents shall not extend to claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code (collectively "<u>Avoidance Actions</u>") but shall extend to the proceeds of such Avoidance Actions. |
| **Interest Rate and Expenses:** | Amounts drawn under the DIP Facility will bear interest at the LIBOR (defined below) rate plus 10.00% per annum (the "<u>Interest Rate</u>"), payable in kind in the form of an increase in principal amount outstanding under the DIP Facility on a monthly basis on the first day of each calendar month (each such date, an "<u>Interest Payment Date</u>").<br><br> "<u>LIBOR</u>" means the rate per annum calculated as set forth below, provided that, in no instance shall LIBOR in respect of any DIP Loan be less than 1.00% per annum:<br><br> (a) On each Interest Determination Date (as defined below), |

LIBOR for the applicable period will be the rate for deposits in United States dollars for a three-month period which appears as the London interbank offered rate on the display designated as "LIBOR01" on the Reuters Screen (or such other page as may replace that page on that service, or such page or replacement therefor on any successor service) as the London interbank offered rate as of 11:00 a.m. London time, on such date.

(b) With respect to any Interest Determination Date on which no such rate appears as the London interbank offered rate for a one-month period on "LIBOR01" on the Reuters Screen (or such other page as may replace that page on that service, or such page or replacement therefor on any successor service) as described above, LIBOR for the applicable period will be determined on the basis of the rates at which deposits for a one month period in United States dollars are offered by the reference banks at approximately 11:00 a.m., London time, on such date to prime banks in the London interbank market for a three-month period (each a "Reference Bank Rate"). DIP Lender shall request the principal London office of each of the Reference Banks to provide a quotation of its Reference Bank Rate. If at least two such quotations are provided, LIBOR for such period will be the arithmetic mean of such quotations. If fewer than two quotations are provided, LIBOR for such period will be the arithmetic mean of the rates quoted by major banks in New York City, selected by DIP Lender, at approximately 11:00 a.m. New York City time, on such date for loans in United States dollars to leading European banks for a one-month period. All percentages resulting from any calculations or determinations referred to in this definition will be rounded upwards to the nearest multiple of 1/1000 of 1.00%, and all U.S. dollar amounts used in or resulting from such calculations will be rounded to the nearest cent (with one-half cent or more being rounded upwards).

"Interest Accrual Period" means each period (i) initially, commencing on the advance date of the initial DIP Loan and ending on the last day of such calendar month (regardless of whether such date is a Business Day) and (ii) thereafter, commencing on the Interest Payment Date and ending on (and including) the last day of such calendar month (regardless of whether such date is a Business Day).

"Interest Determination Date" means the second Business Day immediately preceding the first day of an Interest Accrual Period.

The Obligors shall jointly and severally pay or reimburse all

|  | reasonable and documented costs and expenses associated with the preparation, due diligence, administration and closing of all DIP Credit Documents, including, without limitation, the reasonable and documented legal fees and expenses of counsel to the DIP Lender and of financial advisors and other professionals to the DIP Lender, and the Obligors shall pay the expenses of the DIP Secured Parties in connection with the enforcement of any DIP Credit Documents, including expenses of counsel. |
|---|---|
| **Payments at Maturity:** | Any and all accrued and unpaid interest and principal shall be due and payable on the Maturity Date of the DIP Facility.  In the event the DIP Lender agrees to an extension of the Maturity Date, all accrued and unpaid interest as of the Scheduled Maturity Date shall be due and payable on the such date, and any accrued and unpaid interest as of the date any such extension terminates shall be due and payable on such extension termination date. |
| **Default Interest:** | Automatically after the occurrence of any Event of Default, the applicable interest rate shall be the Interest Rate plus 2%, which shall accrue on all outstanding principal and other DIP Obligations and which shall be due immediately and payable on demand. |
| **Cash Collateral:** | All cash and cash equivalents of the Debtors, whenever or wherever acquired, and the proceeds of all DIP Collateral, constitute cash collateral, as contemplated by Section 363 of the Bankruptcy Code ("Cash Collateral").  Cash Collateral may be used only for working capital purposes of the Debtors, interest and fees under the DIP Facility, the payment of adequate protection to the Pre-Petition Lenders and the allowed costs and expenses of their Chapter 11 Cases, in each case, solely in accordance with the approved DIP Budget (subject to the Permitted Variance) and the DIP Orders incorporating the terms hereof. |
| **Conditions Precedent:** | The obligation of the DIP Lender to make available the Interim Amounts, and the Debtors' right to use Cash Collateral pursuant to the terms hereof will be subject to the satisfaction (or waiver) of all conditions precedent deemed necessary or appropriate by the DIP Lender, as applicable (the "Interim Funding Conditions" and the date of the satisfaction of all Interim Funding Conditions, the "Closing Date")), including but not limited to:

(i)  the filing of the Chapter 11 Cases with the Bankruptcy Court;

(ii)  all motions and other documents to be filed and submitted with the Bankruptcy Court in connection with the DIP Facility |

and the approval thereof shall be in form and substance satisfactory to the DIP Lender;

(iii) the entry into this Term Sheet shall not violate any requirement of law and shall not be enjoined, temporarily, preliminarily, or permanently;

(iv) the DIP Lender shall have received, in form and substance satisfactory to the DIP Lender an executed copy of the Term Sheet,

(v) the DIP Lender shall have received a 13-week cash flow forecast of receipts and disbursements for the period from the Petition Date setting forth projected cash flows and disbursements, in form, scope and substance acceptable to the DIP Lender (the "Initial Approved Budget");

(vi) the Bankruptcy Court shall have entered, on motion, no later than four (4) Business Days after the Petition Date, an interim debtor-in-possession financing/use of cash collateral order, in form and substance acceptable to the DIP Lender (the "Interim DIP Order"), incorporating the terms hereof and containing such other provisions as the DIP Lender may reasonably require, and such order shall not have been (x) vacated, reversed, or stayed, or (y) amended or modified except as otherwise agreed to in writing by the DIP Lender in its sole discretion,  and shall otherwise be in full force and effect;

(vii) entry by the Bankruptcy Court of all "first day" orders, which shall be in form and substance acceptable to the DIP Lender;

(viiii) the DIP Lender shall have received a borrowing request from the Borrower two (2) Business Days prior to funding in form and substance acceptable to the DIP Lender;

(ix) the DIP Lender shall have received, in each case in form and substance acceptable to the DIP Lender: (a) a certificate of the secretary or assistant secretary of each Obligor dated the Closing Date, certifying (A) that attached thereto is a true and complete copy of each organizational document of such Obligor certified (to the extent applicable) as of a recent date by the Secretary of State of the state of its incorporation or organization, as the case may be, (B) that attached thereto is a true and complete copy of resolutions duly adopted by the board

of directors or board of managers, as applicable, of such Obligor authorizing the execution, delivery and performance of this Term Sheet and the other DIP Loan Documents to which such Obligor is or will be a party and that such resolutions have not been modified, rescinded, or amended and are in full force and effect and (C) to the incumbency and specimen signature of each officer executing this Term Sheet and any DIP Loan Document or any other document delivered by such Obligor related thereto on behalf of such Obligor (together with a certificate of another officer as to the incumbency and specimen signature of the secretary or assistant secretary executing the certificate required by this clause), (b) a certificate of an officer of the Borrower dated the Closing Date, certifying that each Interim Funding Condition and Conditions Precedent to All Borrowings have been satisfied as of the date thereof, (c) customary lien searches with respect to each Obligor, (d) financing statements and other documentation for perfection of the DIP Liens requested by the DIP Lender, (e) such information (financial or otherwise) as the DIP Lender may reasonably request and (f) a certificate as to the good standing of each Obligor (in so-called "long-form" if available) as of a recent date of each Obligor, in each case, from such Secretary of State;

(x) the DIP Lender, shall have the valid and perfected liens on the security interests in the DIP Collateral contemplated granted and perfected pursuant to the Interim Order;

(xi)  disclosure by the Debtors to the DIP Lender in writing of all amounts due and payable between and among the Debtors and any entity owned (wholly or in part) by any member of the Knopf family other than (a) amounts between and among the Debtors and (b) amounts owed in the ordinary course of payroll;

(xii) confirmation by the Debtors that all amounts owed by any Debtor to any governmental entity has been paid in full or shall be paid in full in the ordinary course of business, other than as disclosed in writing to the DIP Lender; and

(xiii) such other deliverables as the DIP Lender may reasonably require.

In addition to such other customary conditions as set forth in the DIP Loan Documents and the satisfaction of Interim Funding Conditions, the obligation of the DIP Lender to advance the DIP Loans (other than with respect to any Interim Amounts) shall be subject to the following:

(1) the DIP Lender shall have received executed copies, in form and substance satisfactory to the DIP Lender, of a definitive credit agreement (the "DIP Credit Agreement") and related security agreement(s), guarantees, pledge agreements, mortgages, and other agreements, opinions, instruments and documents required by the DIP Lender (collectively with the Term Sheet, the "DIP Loan Documents" and together with the DIP Orders, the "DIP Credit Documents") of the DIP Loan Documents;

(ii) the DIP Lender shall have received legal opinions of counsel to the Obligors in form and substance satisfactory to the DIP Lender as to authority, authorization, execution, no conflicts, delivery of the DIP Loan Documents, pledge and perfection of security interests, and other customary matters;

(iii) the Bankruptcy Court shall have entered, on motion, no later than 30 days after the Petition Date, an final debtor-in-possession financing/use of cash collateral order, in form and substance acceptable to the DIP Lender (the "Final DIP Order" and together with the Interim DIP Order, the "DIP Orders"), incorporating the terms hereof and containing such other provisions as the DIP Lender may reasonably require, and such order shall not shall not have been (x) vacated, reversed, or stayed, or (y) amended or modified except as otherwise agreed to in writing by the DIP Lender in its sole discretion, and shall otherwise be in full force and effect;

(iv) the DIP Lender shall have received copies of all proposed pleadings and orders in the Chapter 11 Cases, including with respect to "second day" pleadings and orders, with reasonably sufficient time for review and comment by the DIP Lender, and the relief requested by the Debtors in the first and second day orders and pleadings shall be reasonably acceptable in form and substance to the DIP Lender;

(v) the DIP Lender shall have received, in form and substance satisfactory to the DIP Lender (a) executed copies of any deposit account control agreements and security account control agreements reasonably requested by the DIP Lender, (b) any other documentation for perfection of the DIP Liens requested by the DIP Lender; and (c) reasonably requested insurance deliverables; and

(vi) the DIP Lender shall have approved any amendments to the Initial DIP Budget.

10

| | |
|---|---|
| **Conditions Precedent to all Borrowings:** | The conditions to all borrowings (including with respect to any Interim Advance) under the DIP Facility shall be customary for facilities of this type and acceptable to the DIP Lender in its sole discretion, including, but not limited to: |
| | (i) delivery of a borrowing notice two (2) Business Days prior to funding; |
| | (ii) accuracy of representations and warranties in all material respects; |
| | (iii) the Chapter 11 Cases of the Obligors shall not have been dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; |
| | (iv) no trustee under Chapter 11 of the Bankruptcy Code or examiner with enlarged powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code shall have been appointed in the Chapter 11 Cases of any of the Obligors; |
| | (v) the absence of any Default or Event of Default; |
| | (vi) the DIP Orders shall be in full force and effect, shall not have been reversed, modified, amended, stayed, vacated or subject to a stay pending appeal; and |
| | (vii) the Debtors shall be in compliance in all respects with the DIP Orders. |
| **Funding Protection:** | The Obligors shall promptly deliver to the DIP Lender copies of any notices, certificates and reporting (including financial reporting) which shall be acceptable in form and substance to the DIP Lender. |
| | No plan will be proposed or supported by the Debtors that does not provide for payment in cash of all DIP Obligations at closing absent prior written consent of the DIP Lender. |
| | Any material modifications of the DIP Orders materially adverse to the DIP Lender, shall require prior written approval of the DIP Lender. |
| **Priority of DIP Liens and Effect on Existing Liens:** | Each Obligor acknowledges and agrees that all obligations of the Debtors under the DIP Credit Documents, including without limitation, any claims of the DIP Lender pursuant to section 503(b)(9) of the Bankruptcy Code and the reasonable |

| | |
|---|---|
| | professional fees, costs and expenses of the DIP Lender (the "<u>DIP Obligations</u>") shall be: |
| | (i) secured, pursuant to Section 364(c)(2) of the Bankruptcy Code, by valid, binding, enforceable, first priority, fully perfected security interests and liens upon all DIP Collateral that, as of the Petition Date, was unencumbered and the proceeds thereof; and |
| | (ii) secured, pursuant to Section 364(c)(3) and (d)(i) of the Bankruptcy Code, by valid, binding, enforceable, fully perfected security interests and liens upon all DIP Collateral and any proceeds thereof, subject to any (i) valid, binding, enforceable, non-avoidable, and perfected liens in existence on the Petition Date other than the Pre-Petition Security Interests and (ii) valid, enforceable and non-avoidable liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code other than the Pre-Petition Security Interests |
| | ((i) and (ii) collectively, the "<u>DIP Liens</u>"). |
| **Superpriority Claims:** | DIP Lender to also be granted pursuant to Bankruptcy Court approval in Interim DIP Order and Final DIP Order a super-priority administrative expense claim (the "<u>DIP Superpriority Claim</u>") with respect to the DIP Obligations that will, in accordance with Section 364(c)(1) of the Bankruptcy Code, have priority over any and all administrative expenses of and unsecured claims against any of the Debtors now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code other than any administrative expense claims granted pursuant to the Final DIP Order. <br><br> The DIP Obligations, shall not be subject to the equitable doctrine of marshaling. <br><br> The DIP Superpriority Claims will survive any conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or the dismissal of any of the Chapter 11 Cases. |
| **Adequate Protection Obligations:** | Each of the Pre-Petition Lenders is entitled, pursuant to sections 361, 363(e), and 364(d)(1) of the Bankruptcy Code, to the following adequate protection of its respective interests in the Pre-Petition Collateral, in exchange for the Debtors' use of such Pre-Petition Collateral and the granting of priming DIP Liens hereunder and under the DIP Credit Documents, to the extent of |

| | the diminution in value, if any, of the Pre-Petition Collateral, including, without limitation, any diminution in value resulting from the sale, lease or use by the Debtors (or other decline in value) of any Pre-Petition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code: |
|---|---|
| | (a) the Pre-Petition Lenders shall be granted, effective and perfected as of the entry of the Interim Order and without the necessity of the execution of any mortgage, security agreements, financing statements, or other documentation, (i) additional liens upon all of the DIP Collateral, in each case, subject and subordinate to the Carve Out (as defined below), the DIP Liens and any liens that have priority over the DIP Liens (such liens, the "Pre-Petition Adequate Protection Liens") and (ii) super-priority claims as provided for in section 507(b) of the Bankruptcy Code, junior in priority only to the DIP Superpriority Claims; and |
| | (b) Upon entry of the Final DIP Order, the DIP Lender shall be authorized, in its discretion, to fund under the DIP Facility (one or more DIP Loans in an amount sufficient to pay, and to be used to cause payment in full of all outstanding Pre-Petition Obligations (the "Roll-up"), and, in such event, the Borrower is authorized to draw and shall be deemed to have drawn on the DIP Facility in order to effectuate the Roll-Up. |
| **Carveouts to DIP and Adequate Protection Liens and Superpriority Claims** | The Borrower shall be authorized to establish a separate deposit account for certain amounts (collectively, the "Carve-Out Reserve").[1] Upon the occurrence of the Carve-Out Trigger Date, the Borrower shall be authorized to transfer cash from a segregated deposit account furnished by a depositary bank that is (a) acceptable to the DIP Lender and (b) party to a Uniform |

---

[1] The "Carve-Out" is an amount equal to the sum of (i) all fees required to be paid to the clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United State Code (plus any applicable interest at the statutory rate) for the period up to the occurrence of a Carve-Out Trigger (as defined below), (ii) the budgeted (subject to the Permitted Variance), documented and unpaid fees, costs and expenses that were accrued or incurred prior to the Carve-Out Trigger by the persons or firms retained as estate professionals by the Debtors ("Debtors' Professionals") or the Creditors' Committee ("Committee Professionals", as applicable, and, collectively with the Debtors' Professionals, the "Professionals") and payable under sections 330 and 331 of the Bankruptcy Code, to the extent allowed by an order of the Bankruptcy Court (whether such retention and/or allowance has occurred prior to or after the occurrence of the Carve-Out Trigger), subject to the terms of the Financing Orders and any other compensation and other orders entered by the Bankruptcy Court; and (iii) up to a maximum amount of $150,000 of unpaid documented fees, costs and expenses accrued or incurred by Debtors' Professionals and $25,000 of unpaid documented fees, costs and expenses accrued or incurred by Committee Professionals following the occurrence of the Carve-Out Trigger, payable under sections 330 and 331 of the Bankruptcy Code and subsequently allowed by order of the Bankruptcy Court following the occurrence of the Carve-Out Trigger. For the avoidance of doubt, these sums are in addition to fees amounts provided for under item (ii) above.

| | |
|---|---|
| | Depository Agreement with the U.S. Trustee or is willing to immediately execute such a Uniform Depository Agreement (such account, the "<u>DIP Account</u>") and/or to borrow under the DIP Facility in an aggregate amount equal to the amount sufficient to fully fund the Carve-Out Reserve into a segregated deposit account not in the control of the DIP Lender. Once funded in accordance with this paragraph, the Carve-Out Reserve may only (subject to the provisions of the immediately succeeding paragraph) be used to pay those obligations for which the Carve-Out Reserve was established. For the avoidance of doubt, all Carve-Out amounts funded pursuant to this paragraph shall be deemed a DIP Obligation.<br><br>The Carve-Out Reserve and the proceeds on deposit in respect thereof shall be available only to satisfy obligations to which the Carve-Out expressly relates, except that the DIP Lender shall retain liens and security interests, which shall be a super-priority lien, in any remaining amounts left in the Carve-Out Reserve (the "<u>Unused Carve-Out Amounts</u>") following satisfaction in full of all obligations to which the Carve-Out expressly relates, and shall receive distributions, on demand, on account of any unpaid DIP Obligations from such Unused Carve-Out Amounts.<br><br>Notwithstanding anything to the contrary herein, in the DIP Loan Documents, the DIP Orders or any other order of the Court, the rights and claims of the DIP Lender, including the New DIP Liens (and all liens junior or senior to the DIP Liens), shall be subject and subordinate in all respects to the payment of the Carve-Out from the Carve-Out Reserves (each as defined below). Following the occurrence of an Event of Default or default under the Final DIP Order (each, a "<u>Carve-Out Trigger Event</u>"), and delivery of notice thereof (the "<u>Carve-Out Trigger Notice</u>") (which may be by email) to the Borrower, the United States Trustee and other parties in interest (the date of a delivery of such notice, the "<u>Carve-Out Trigger Date</u>"), the Borrower shall be entitled to use remaining availability (if any) under the DIP Facility for the following purposes only and without duplication in the amount of the Carve-Out. |
| **Voluntary and Mandatory Prepayments:** | The Borrower may prepay amounts drawn under the DIP Facility, in whole or in part, at any time and from time to time without penalty upon two (2) days' notice to the DIP Lender of such prepayment.<br><br>Prior to the Maturity Date, the DIP Facility shall be due and payable, and will be paid, on each date that any Obligor receives any net cash proceeds from the sale of the DIP Collateral outside |

| | |
|---|---|
| | the ordinary course of business, net cash proceeds of issuances of indebtedness or equity by the Obligors or net cash insurance or condemnation proceeds, in the amount of any such net cash proceed or proceeds, as the case may be. |
| **Representations and Warranties/Covenants:** | The DIP Loan Documents to include standard and customary representations and warranties, and covenants for typical transactions of this type, which shall be acceptable in form and substance to the DIP Lender in its sole discretion, including, but not limited to:<br><br>• the extent, validity, priority and perfection of the DIP Lender's liens;<br>• DIP Loan was made in good faith;<br>• DIP Loan Proceeds and Cash Collateral shall be used in accordance with approved DIP Budget and only for the Borrower and not any other potential debtors or affiliates of Borrower;<br>• representation and covenant that all representations, warranties and information provided to the DIP Lender by the Debtors is true and correct in all material respects<br>• Representation that, other than as disclosed in writing to the DIP Lender, (i) no non-Debtor entity in which any member of the Knopf family holds an interest, is a beneficial owner, or exercises control, either directly or indirectly, (a "<u>Related Party Entity</u>") owns or controls property (either real or personal) leased to or used by any of the Debtors and (ii) no Related Party Entity is a counterparty to any contract with the Debtors, nor does any Related Party Entity provide services to the Debtors;<br>• Representations and warranties related to real property and leased premises, including compliance with all laws, regulations and insurance requirements, including without limiting the foregoing, the procurement and maintenance of required insurance, insurance certificates and endorsements; and application of insurance and casualty proceeds;<br>• Prohibitions on additional indebtedness, except, if any, those that shall be permitted under the DIP Loan Documents;<br>• Prohibitions on additional liens, except, if any, those that shall be permitted under the DIP Loan Documents;<br>• Prohibitions on sale and leaseback transactions;<br>• Prohibitions on investments, loans and advances (collectively, the "<u>Investments</u>"), except, if any, those that shall be permitted under the DIP Loan Documents;<br>• Prohibition on mergers, consolidations, sales of assets ("<u>Dispositions</u>") and acquisitions, except, if any, those that |

shall be permitted under the DIP Loan Documents;

- Prohibition on dividends and distributions;
- Prohibitions on capital expenditures except as needed for maintenance and safety or as otherwise specifically contemplated by the DIP Budget or approved by order of the Bankruptcy Court;
- Prohibitions on transactions with non-Debtor affiliates;
- Prohibitions on changes in business, including but not limited to the sale of inventory outside the ordinary course of business except as otherwise permitted under the DIP Loan Documents or as approved by the Bankruptcy Court;
- Prohibition on the payment and modification of prepetition indebtedness, except with respect to adequate protection payments, pursuant to the DIP Orders;
- Prohibition on termination, modification or amendments of organizational documents, in each case, in a manner adverse to the rights, interests and remedies of the DIP Lender;
- Prohibition on changes to fiscal year and accounting;
- Prohibition on hedging agreements and other derivative transactions;
- Prohibition on alterations and expansions; zoning and uses; and waste;
- Intellectual Property covenants;
- ERISA covenants, including but not limited to significant changes in headcount, compensation plans or employee benefit plans.
- Covenant that Borrower and its affiliates shall maintain all leased premises pursuant to the DIP Budget and as agreed by the DIP Lender
- Prohibition on the Borrower and its affiliates terminating or otherwise adversely affecting any material contract of the Borrower or its affiliates without the consent of the DIP Lender
- Covenant that the Borrower shall liquidate all return, excess and obsolete inventory within 60 days of the Petition Date.
- Post-petition supply by DIP Lender and its affiliates of any goods or services to be provided on seven (7) day terms with an aggregate maximum balance not to exceed $500,000. All incentive programs between the DIP Lender and its affiliates, on the one hand, and the Debtors, on the other hand, will remain in place except that pre-petition incentives will be applied against the pre-petition payable balance and post-petition incentives will be applied against the post-petition payable balance.
- Covenant to pay the reasonable professional fees, costs and expenses of the DIP Lender incurred in connection with the

|  |  |
| --- | --- |
|  | DIP Facility and the Debtors' Chapter 11 Cases<br>• Covenant to cause any tax refunds (net of any resulting post-petition tax liability) received by any shareholder or principal of any Debtor on account of any tax paid by any Debtor to be turned over to such Debtor promptly after receipt. |
| **Financial Reporting / Budget:** | The Borrower shall provide for approval by the DIP Lender a revised cash forecast on a bi-weekly basis beginning with the 7th day following the entry of the Interim DIP Order by the close of business on the Wednesday following each such budgeted week, which budget shall be in form and substance acceptable to the DIP Lender (each, an "Updated Budget"). The term "DIP Budget" shall mean the Initial Approved Budget until such time as an Updated Budget is approved, following which such Updated Budget shall constitute the DIP Budget until a subsequent Updated Budget is so approved.<br><br>The Borrower shall further (i) deliver to the DIP Lender, with such proposed Updated Budget, a variance report, in form and detail acceptable to the DIP Lender, showing actual performance against the DIP Budget, together with any proposed modifications to the DIP Budget , (ii) permit the DIP Lender to audit and analyze the Debtors' business records upon reasonable advance notice in connection with the matters herein (including providing reasonable access to the DIP Lenders' professionals) and (iii) provide such other information (including access to the Debtors' books, records, personnel and advisors) as the DIP Lender may reasonably request.  Requests by the Borrower for modifications to the DIP Budget that would cause the Borrower to breach the Variance Covenant, as defined below, shall require approval of the DIP Lender.<br><br>The Debtors shall comply with the following (collectively, the "Variance Covenant"):<br><br>For any one-week period contemplated by the DIP Budget, the collections and disbursements, (measured separately) shall not deviate more than ten percent (10%) (under the budgeted amount in the case of collections, and over the budgeted amount in the case of disbursements) from the projected amounts for such period as set forth in the DIP Budget, provided, however, that the Borrower shall and shall be entitled to reserve budgeted professional fees on a weekly basis, such fees to be reconciled as to actuals upon actual billing, Bankruptcy Court approval and payment. |

| | |
|---|---|
| | In the event the Borrower has a positive balance against the budgeted amount in collections or disbursements at the end of any one-week period (over the budgeted amount in the case of collections, and under the budgeted amount in the case of disbursements), the Borrower may carry-forward such positive balance to the following week, provided that, any such carry-forward with respect to disbursements can only be utilized within the line item from which such carry-forward was generated; provided further, that all positive balance carry-forwards shall be "cleared" and of no further use at such time that any Updated Budget is approved as described above. |
| **Milestones:** | Milestones shall be subject to extension by consent of the DIP Lender and shall include:<br><br>- Entry of Interim DIP Order no later than two (2) Business Days from the Petition Date<br><br>- Entry of Final DIP Order no later than 30 calendar days from the Petition Date<br><br>- §363 Milestones<br><br>• Filing of §363 bid procedures and stalking horse bid materials in form and substance satisfactory to the DIP Lender no later than 30 calendar days after the Petition Date<br>• Entry of an order in form and substance satisfactory to the DIP Lender approving the bid procedures and stalking horse bid protections (the "<u>Bid Procedures Order</u>") by the Bankruptcy Court no later than 30 calendar days after the filing of such bid procedures and stalking horse bid<br>• Bid deadline no later than 45 calendar days from date of entry of Bid Procedures Order<br>• Auction to be commenced no later than 5 calendar days after the bid deadline as provided in the Bid Procedures Order<br>• Sale order hearing to be held no later than 2 calendar days from the conclusion of the auction<br>• Entry of a sale order in form and substance satisfactory to the DIP Lender (the "<u>Sale Order</u>") by the Bankruptcy Court no later than 3 calendar days from the commencement of the auction<br>• Closing of sale no later than 15 calendar days from entry of the Sale Order<br>• If a sale is consummated, entry of an order by the Bankruptcy |

| | Court approving the liquidation of the Debtors within 60 days |
|---|---|
| **Events of Default:** | Usual and customary events of default (each, an "Event of Default"), including, without limitation, failure to pay principal or interest when due, failure to maintain the assets of the Borrower and its affiliates, breach of covenants, breach of representations and warranties, failure to comply with the Milestones, failure to comply with Budget (subject to the Variance Covenant), and Bankruptcy Events of Default (as defined below) subject to a cure period for each such default of five (5) calendar days, other than with respect to a default for failure to pay principal or interest when due, failure to comply with the Milestones or a Bankruptcy Event of Default. |
| | The bankruptcy events of default (the "Bankruptcy Events of Default") shall include the following: |
| | (a) Written assertion by any Obligor or any affiliate thereof of the invalidity or impairment of (i) any DIP Credit Document (including the failure of any lien of the DIP Lender to remain perfected and with respect to such impairment, superior to and prior to the rights of all persons or any guarantee agreement ceasing to be in full force and effect), (ii) any Pre-Petition Loan Document, or any Guarantor shall default in the due performance or observance of any term, covenant or agreement on its part to be performed or observed under the DIP Credit Documents. |
| | (b) |
| | (i) other than with the consent of the DIP Lender, the entry of an order dismissing any of the Chapter 11 Cases of the Obligors or converting any of the Chapter 11 Cases of the Obligors to a case under chapter 7 of the Bankruptcy Code, or any filing by the Obligors of a motion or other pleading seeking entry of such an order; |
| | (ii) a trustee, responsible officer or an examiner having expanded powers (beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) under section 1104 of the Bankruptcy Code (other than a fee examiner) is appointed or elected in the Chapter 11 Cases of the Obligors, any Obligor applies for, consents to, or acquiesces in, any such appointment, or the Bankruptcy Court shall have entered an order providing for such appointment, in each case without the prior written consent of the DIP Lender in its sole discretion; |
| | (iii) the entry of an order staying, reversing, vacating or otherwise amending or modifying the Interim DIP Order or the Final DIP |

Orders, whether by appeal or otherwise, or the filing by any Obligor of an application, motion or other pleading seeking entry of such an order;

(iv) the entry of an order in any of the Chapter 11 Cases of the Obligors granting relief from any stay or proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure against any assets of the Obligors if such assets constitute collateral subject to a first priority lien securing the DIP Facility;

(v) the entry of a final non-appealable order in the Chapter 11 Cases of the Obligors (A) charging any of the DIP Collateral or under section 506(c) of the Bankruptcy Code against the DIP Lender, or the commencement of other actions by the Obligors that challenges the validity, extent or priority of any DIP Liens, the validity, extent, perfection or priority of any liens granted under or in connection with the Pre- Petition Loan Documents, or the rights and remedies of the DIP Lender under the DIP Loan Documents in any of the Chapter 11 Cases of the Obligors or inconsistent with the applicable DIP Credit Documents, (B) avoiding or requiring disgorgement by the DIP Lender of any amounts received in respect of the obligations under the DIP Loan Documents or (C) resulting in the marshaling of any DIP Collateral;

(vi) without the consent of the DIP Lender, the entry of an order in any of the Chapter 11 Cases of the Obligors seeking authority (A) to obtain financing under Section 364 of the Bankruptcy Code (other than the DIP Facility), unless such financing would repay in full in cash all obligations under the DIP Facility upon consummation thereof, or (B) to use any cash proceeds of any of the DIP Collateral without the DIP Lender's consent;

(vii) without the consent of the DIP Lender, the entry of an Order in any of the Chapter 11 Cases terminating any Obligor's exclusive period to file a Chapter 11 plan, the filing of a pleading by any Obligor requesting, consenting to or supporting such relief, or the failure of any Obligor to timely object to any motion requesting such relief; or

(viii) the filing or support of any pleading by any Obligor (or any direct or indirect parent thereof) seeking, or otherwise consenting to, any of the matters set forth in clauses (i) through (vi) above.

(c) the commencement of any Insolvency Proceeding by an

Obligor other than the Chapter 11 Cases.

(d) An order of the Bankruptcy Court granting, other than in respect of the DIP Facility and the Carve Out or as otherwise permitted under the applicable DIP Credit Documents, (i) a priority of any lien against the Obligors that is equal to or senior to the priority of the liens of the DIP Lender under the DIP Facility, or (ii) any claim entitled to superpriority administrative expense claim in the Chapter 11 Cases pursuant to section 364(c)(1) of the Bankruptcy Code, pari passu with or senior to the claims of the t he DIP Lender under the DIP Facility, or the filing by the Debtors of a motion or application seeking entry of such an order.

(e) Noncompliance by any Obligor with the terms of the Interim Order or the Final Order.

(f) The use of any cash collateral in any manner not expressly permitted under the terms of the Interim Order or Final Order.

(g) The Obligors (or any direct or indirect parent of any Obligor) shall obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against the the DIP Lender regarding the DIP Facility.

(h) An order is entered approving the solicitation of votes on a plan of reorganization in any of the Chapter 11 Cases of the Obligors that is not an acceptable to the DIP Lender or an order approving a sale under section 363 of the Bankruptcy Code or any order relating to such sale (including, but not limited to an order approving sale procedures) shall be entered that does not provide for indefeasible payment in full of the DIP Obligations in cash on the effective date of such sale or is otherwise not satisfactory to the DIP Lender, or any order shall be entered which dismisses any of the Chapter 11 Cases of the Obligors and which order does not provide for termination of the unused commitments under the DIP Facility and payment in full in cash on the effective date of such dismissal of the relevant Obligors' obligations under the DIP Facility or is not otherwise satisfactory to the DIP Lender, or any of the Obligors (or any of their direct or indirect parents) shall file, propose, support, or fail to contest in good faith the filing or confirmation of such a plan or the entry of such an order.

(i) Failure to execute and deliver the DIP Loan Documents on or

| | prior to the date that is 10 Business Days from the Petition Date. |
|---|---|
| **Default Remedies** | Upon the occurrence of an Event of Default, the DIP Lender may declare (a) the termination, reduction or restriction of any further commitment to the extent any such commitment remains; (b) all obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Obligors and (c) the termination of the DIP Credit Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens, rights under the Carve-Out, or the liabilities or obligations of any Obligor;<br><br>Upon or after the occurrence of an Event of Default, and subject to the giving of five (5) Business Day's written notice (the "Default Notice Period"), the automatic stay provisions of Section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Lender to exercise all rights and remedies provided in the DIP Orders (and as applicable the DIP Loan Documents), as applicable, all without further order of the Bankruptcy Court; *provided*, *however*, that the DIP Lender will not exercise remedies prior to the expiration of the Default Notice Period other than to cease extending any credit to any Borrower under the DIP Facility.<br><br>The DIP Orders will provide that (a) the automatic stay under Section 362(a) of the Bankruptcy Code will be automatically vacated and modified, effective following the expiration of the Default Notice Period, unless the Bankruptcy Court has determined otherwise, after notice and a hearing, (b) during the Default Notice Period, the Borrower and the Guarantors will (i) have no right to request or obtain extensions of credit under the DIP Facility other than with the consent of the DIP Lender and (ii) be entitled to an emergency hearing before the Bankruptcy Court, with proper notice to the DIP Lender, and (c) the rights and remedies of the DIP Lender specified in each Financing Order will be cumulative and not exclusive of any other rights or remedies that any DIP Lender may have under this term sheet, the DIP Loan Documents, applicable law or otherwise; provided, further, that no notice shall be required for any exercise of rights or remedies (i) to block or limit withdrawals from any bank accounts that are a part of the DIP Collateral (including, without limitation, by sending any control activation notices to depositary banks pursuant to any control agreement), and (ii) in the event the obligations under the DIP Facility have not been repaid in full in cash on the Stated Maturity Date. Each Obligor hereby grants to |

| | |
|---|---|
| | the DIP Agent, effective upon an Event of Default, an irrevocable, non-exclusive, worldwide, fully assignable and sublicenseable, license, under all applicable Intellectual Property rights, to commercialize and exploit any Intellectual Property included in the DIP Collateral, for the purpose of enabling the Lender Agent to exercise all rights and remedies provided for it in the DIP Credit Documents. |
| **Other Terms** | DIP Lender shall have absolute right to credit bid all DIP Obligations in connection with any sale transaction. |
| **Indemnity:** | Debtors shall agree to indemnify and hold harmless the DIP Lender and each of their respective affiliates and each of their respective officers, directors, employees, agents, advisors and representatives (each, an "<u>Indemnified Party</u>") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, reasonable fees and disbursements of counsel), that may be incurred by or asserted or awarded against any Indemnified Party (including, without limitation, in connection with any investigation, litigation or proceeding or the preparation of a defense in connection therewith), arising out of or in connection with or by reason of the transactions contemplated hereby, including, but not limited to, (a) the execution or delivery of this Term Sheet, the DIP Loan Documents or any agreement or instrument contemplated hereby or thereby, the performance by the parties hereto of their respective obligations hereunder or thereunder, the consummation of the transactions contemplated hereby or thereby and the enforcement of this Term Sheet and the DIP Loan Documents; (b) any DIP Loan or the use or proposed use of the DIP Loan Proceeds and (c) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by any Obligor, and regardless of whether any Indemnified Party is a party thereto, except to the extent found in an final non-appealable judgment by a court of competent jurisdiction to be arising from an Indemnified Party's bad faith, gross negligence, willful misconduct or material breach, or arising from any dispute solely among the indemnified persons and not arising out of any act or omission of the Debtors. In the case of an investigation, litigation or other proceeding to which the indemnity in this paragraph applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by any of the Debtors, any of their respective directors, security holders or creditors, an Indemnified Party or any other person or an Indemnified Party is otherwise a party thereto and whether or not |

|  | the transactions contemplated hereby are consummated. |
|---|---|
| **Governing Law and Jurisdiction:** | State of New York (and, to the extent applicable, the Bankruptcy Code). |
| **Stipulations:** | The DIP Orders shall provide for, among other things,:<br><br>(i) a full release by the Debtors of the DIP Lender, its affiliates, directors, officers, shareholders, agents and representatives: and<br><br>(ii) a stipulation by the Debtors that they have been and remain unable to obtain any alternative financing on better or same terms as the DIP financing proposed hereunder. |

IN WITNESS WHEREOF, this agreement has been duly executed and delivered by each of the parties hereto as of the date first above written.

**TEMPUR WORLD, LLC** as DIP Lender

By:    _____

Name: _____

Title: _____

Innovative Mattress Solutions, LLC, as Borrower

By: _____
    Name: _____
    Title: _____

Knopf Systems, LLC

By: _____
    Name: _____
    Title: _____

K.B. & Associates, Incorporated

By: _____
    Name: _____
    Title: _____

Brown Immobilien LLC

By: _____
    Name: _____
    Title: _____

Sleep Outfitters of Kentucky, LLC

By: _____
    Name: _____
    Title: _____

Sleep Outfitters of Ohio, LLC

By: _____
    Name: _____
    Title: _____

*Privileged & Confidential*
*Attorney-Work Product*
*CGSH Draft January 10, 2019*

Sleep Outfitters of Tennessee, LLC

By: _____
Name: _____
Title: _____


Sleep Outfitters of Alabama, LLC

By: _____
Name: _____
Title: _____


Sleep Outfitters of Indiana, LLC

By: _____
Name: _____
Title: _____


Sleep Outfitters of West Virginia, LLC

By: _____
Name: _____
Title: _____


Sleep Liquidators LLC

By: _____
Name: _____
Title: _____